**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| MAUDE VALEMBRUN,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, *et al*.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 8:26-cv-01309-DLB |

* * * * * * * * * * * * *

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WELLS FARGO'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

Plaintiff Maude Valembrun ("Plaintiff") has sued defendants Wells Fargo Bank, National Association ("Wells Fargo"), Navy Federal Credit Union ("Navy Federal"), and John Doe in connection with a wire transfer Plaintiff sent from a Wells Fargo banking branch. Plaintiff claims she intended to send the wire from her account with Wells Fargo to an account she held with Navy Federal. Plaintiff further claims that a Wells Fargo employee helped her complete the Outgoing Wire Transfer Request ("Transfer Request") that authorized the transfer. According to Plaintiff, the Wells Fargo employee correctly listed Plaintiff as the intended beneficiary, but inadvertently listed the account number for Plaintiff's Wells Fargo account as both the source account and the destination account. As it turned out, defendant John Doe held an account at Navy Federal with the same exact number as Plaintiff's Wells Fargo account. This resulted in Navy Federal crediting the wired funds to John Doe's account, rather than Plaintiff's Navy Federal Account. Plaintiff now brings claims against Wells Fargo for violations of the Uniform Commercial Code ("UCC") and for negligence. Both claims must be dismissed.

Plaintiff's UCC claim fails because she does not dispute that she personally signed the Transfer Request. Therefore, Plaintiff authorized the transfer within the meaning of UCC § 4A-202 and she cannot obtain a refund from Wells Fargo on the ground that the transfer was "unauthorized" or "erroneous." Further, Plaintiff cannot recover from Wells Fargo based on the "mismatch" between the beneficiary name and the beneficiary account number listed in the Transfer Request. As explained herein, Plaintiff does not allege that Navy Federal had actual knowledge of the mismatch. Further, Wells Fargo informed Plaintiff beforehand that Navy Federal might process the wire transfer based solely on the destination account number in the Transfer Request. Therefore, Plaintiff's purported claim under UCC § 4A-207 also fails. Finally, Plaintiff's negligence claim fails because it is displaced by the UCC, which comprehensively and exclusively governs wire transfers. Therefore, both claims against Wells Fargo should be dismissed with prejudice.

## II. FACTS ALLEGED IN COMPLAINT

The relevant facts, as alleged in Plaintiff's First Amended Complaint and Demand for Jury Trial (ECF No. 6, the "FAC") and the Transfer Request referenced in the FAC, are as follows. Plaintiff sent the subject wire transfer in person from a Wells Fargo branch on March 11, 2025. ECF No. 6 ¶ 8. A copy of the Transfer Request, which Plaintiff signed to authorize the transfer, is attached hereto as **Exhibit A**. In the Transfer Request, Plaintiff authorized Wells Fargo to transfer $62,439.08 from her Wells Fargo account with an account number ending in 7921 to a Navy Federal account with the same account number. *See* Ex. A at 2. The Transfer Request further indicated that Plaintiff was the intended beneficiary of the transfer. *See id*.

By signing the Transfer Request, Plaintiff assented to the terms of Wells Fargo's Agreement for Outgoing Wire Transfer Requests ("Wire Transfer Agreement"), which was appended to the Transfer Request. *See id*. at 4-5. The Wire Transfer Agreement provides, among

other things, that "[i]f a wire transfer request describes the person to receive the wire transfer ("Beneficiary") inconsistently by name and account number, the wire transfer may be made on the basis of the account number even if the account number identifies a person different from the Beneficiary." *Id*. at 4.

Plaintiff claims that she meant to send the wire from her Wells Fargo account to an account she held at Navy Federal. *See* ECF No. 6 ¶ 10. Plaintiff further alleges the Wells Fargo employee who helped her complete the Transfer Request inadvertently entered the account number for Plaintiff's Wells Fargo Account as both the originating account number and recipient account number. *See id*. ¶ 12. As it turns out, defendant John Doe held an account at Navy Federal with the same account number as Plaintiff's Wells Fargo account. *See id*. ¶ 14. Although Plaintiff claims she meant to wire the funds to her Navy Federal account, she does not dispute that she signed the Transfer Request, wherein she authorized the transfer to be sent to John Doe's Navy Federal Account. *See* Ex. A at 2.

Plaintiff alleges that Wells Fargo tried to retrieve the funds, but that Navy Federal had already credited them to John Doe's account. *See* ECF No. 6 ¶ 14. Plaintiff further alleges that Navy Federal would not return the funds or disclose John Doe's identity. *See id*. ¶ 16. Plaintiff claims that she lost the principal sum of $62,439.08, lost the use of the funds, and suffered from "physical and emotional distress to the point of illness." *Id*. ¶ 17. Based on these allegations, Plaintiff sues Wells Fargo for UCC violations and negligence, sues Navy Federal for UCC violations and negligence, and sues John Doe for conversion. *See id*. ¶¶ 18-39.

## III. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) permits a defendant to move to dismiss for "failure to state a claim upon which relief can be granted[.]" To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

"[A] court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citation omitted). Thus, a court rules on a motion to dismiss by "separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that the plaintiff is entitled to the legal remedy sought." *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011). The court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"While a 12(b)(6) motion focuses on the allegations of the complaint, it is well established that a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was integral to the complaint and authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (quotation marks and citation omitted).

## IV. ARGUMENT

### A. Plaintiff fails to state a claim against Wells Fargo under UCC Article 4A.

#### 1. Plaintiff's claims under Md. Code, Com. Law §§ 4A-204 and 4A-205 fail because she signed the Transfer Request that authorized the wire.

In her UCC claim against Wells Fargo, Plaintiff alleges that "a receiving bank is liable for unauthorized or erroneous payment orders" under Md. Code, Comm. Law § 4A-204. Plaintiff appears to be referencing § 4A-204(a)(1), which provides:

> If a receiving bank accepts a payment order issued in the name of its customer as sender which is (i) not authorized and not effective as the order of the customer under § 4A-202 of this subtitle or (ii) not enforceable, in whole or in part, against the customer under § 4A-203 of this subtitle, the receiving bank shall refund any payment of the payment order received from the customer to the extent that the receiving bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund.

Md. Code, Comm. Law § 4A-204(a)(1). By way of background, Article 4A defines a "receiving bank" as "the bank to which the sender's instruction is addressed." *Id*. § 4A-103(a)(4). In turn, a "sender" is defined as "the person giving the instruction to the receiving bank." *Id*. § 4A-103(a)(5). Here, Plaintiff was the "sender" of the payment order that directed Wells Fargo, the "receiving bank," to initiate the fund transfer.

Under § 4A-204(a)(1), a sender can obtain a refund if a payment order was (i) not authorized and not effective as the order of the customer under § 4A-202; or (ii) not enforceable, in whole or in part, against the customer under § 4A-203. In turn, § 4A-202 provides that the sender is bound by a payment order where the order is *either* "authorized" or "verified." *See id.* § 4A-202(a)-(b). An order is authorized if the sender "authorized the order or is otherwise bound by it under the law of agency." *Id*. § 4A-202(a). Here, Plaintiff does not dispute that she signed the Transfer Request authorizing Wells Fargo to send the wire transfer. Therefore, the payment

order was "authorized" by Plaintiff and she is bound by the order. *See Satterfield v. Wells Fargo Bank, N.A.*, No. 1:23-cv-00009, 2023 U.S. Dist. LEXIS 85081, at *5 (E.D. Va. May 15, 2023) ("While a bank can be liable under [Article 4A] for *not* accepting a payment order, no provision of [Article 4A] imposes liability on a receiving bank that properly executes a duly authorized wire transfer by the sender."). Since the payment order was "authorized," the Court need not consider whether the order was also "verified," since these are two independent grounds for holding the sender liable for the order. *See Jajati v. JP Morgan Chase Bank, N.A.*, 711 F. Supp. 3d 169, 175-76 (E.D.N.Y. 2024) ("[F]or the bank's refund obligations to be triggered . . . the payment order must be neither authorized nor effective. If the payment order is authorized or effective, the bank bears no refund obligation.").[1]

In summary, § 4A-204(a)(1) would entitle Plaintiff to a refund from Wells Fargo only if the payment order were neither authorized nor verified. Since it is undisputed that Plaintiff signed the Transfer Request and thereby authorized the order, she cannot recover under § 4A-204(a)(1).

Relatedly, Plaintiff argues she is entitled to a refund because she "timely notified Wells Fargo of the erroneous payment order" pursuant to Md. Code, Com. Law § 4A-205. ECF No. 6 ¶ 23. However, that section is also inapplicable. Under certain circumstances, Section 4A-205 excuses the sender of a payment order from liability if the order "was transmitted pursuant to a security procedure for the detection of error[.]" Md. Code, Com. Law § 4A-205(a). However, this section "does not apply if the receiving bank and the customer did not agree to the establishment of a procedure for detecting error." UCC § 4A-205 official cmt. 1.

[1] Likewise, since the order was authorized, the Court need not consider § 4A-203, which contains further provisions governing orders that are verified but not authorized.

Here, the FAC does not allege that Plaintiff and Wells Fargo agreed to utilize any sort of security procedure to detect the alleged error in the destination account number.[2] Rather than rely on a "security procedure," the parties relied on Plaintiff's in-person review of the Transfer Request to detect any error in the destination account number. Therefore, Plaintiff cannot rely on § 4A-205 to avoid liability for the wire transfer. *See Berry v. Regions Fin. Corp.*, 507 F. Supp. 3d 972, 981-82 (W.D. Tenn. 2020) ("Commercially reasonable security procedures are necessary when payment orders are electronically transmitted and there is therefore no way of determining the identity or the authority of the person who caused the message to be sent. Because Plaintiffs authorized the wire transfer in person and not electronically, [UCC § 4A-205] is inapplicable to the case and Plaintiffs' [UCC § 4A-205] claim is futile.") (quotation marks and citation omitted); *see also Arubawater Corp. v. Wells Fargo Bank, N.A.*, 703 F. Supp. 3d 995, 1004-05 (D. Ariz. 2023) ("[T]he [account] agreement does not establish a security procedure as required under [UCC § 4A-205], and the statute does not apply. Therefore, Plaintiff has failed to state a claim under [UCC § 4A-205]."); *Sherlock Invs.-Duvall LLC v. Intercoastal Auto Brokers & Logistics, LLC*, No. 2:20-cv-00129-RAJ-BAT, 2020 U.S. Dist. LEXIS 149014, at *15 (W.D. Wash. Apr. 7, 2020) ("[Plaintiff] makes no allegation that it and [the receiving bank] ever agreed to any specific security procedure, and therefore, Section 4A-205 does not apply.").

**2. Plaintiff's claim under Md. Code, Com. Law § 4A-207 fails since she does not allege Navy Federal knew about the mismatch and since Plaintiff knew Navy Federal could rely solely on the account number.**

Also within her UCC claim, Plaintiff argues that "[u]nder Md. Code Com. Law § 4A-207(b), when a payment order identifies a beneficiary both by name and account number and the

[2] To the contrary, Plaintiff agreed that "[i]f a wire transfer request describes the person to receive the wire transfer ("Beneficiary") inconsistently by name and account number, the wire transfer may be made on the basis of the account number even if the account number identifies a person different from the Beneficiary." Ex. A at 4.

number refers to a different person, the bank bears responsibility if it fails to exercise ordinary care." ECF No. 6 ¶ 20. However, Plaintiff's reading of § 4A-207 is incorrect. As explained below, in the case of a "mismatch" between the beneficiary name and beneficiary account number listed on a payment order, liability turns on (a) whether the beneficiary's bank (here, Navy Federal) has actual knowledge of the mismatch, and (b) whether the originator's bank (here, Wells Fargo) provided certain required notices to the originator before the transfer. Under the facts alleged here, Plaintiff could potentially recover the disputed funds from John Doe, but she has no claim against Wells Fargo or Navy Federal.

Md. Code, Com. Law § 4A-207(b) provides in part:

> (b) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
>
> > (1) Except as otherwise provided in subsection (c) of this section, if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.
> >
> > **(2)** If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

The UCC defines the "beneficiary's bank" as "the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order[.]" Md. Code, Com. Law § 4A-103(a)(3). Thus, Navy Federal is the beneficiary's bank in this case. In turn, Navy Federal was entitled to rely on the destination account number listed in the Transfer Request unless it knew the account number and the name of the beneficiary referred to different persons.

Under the UCC, the term "know" means to have "actual knowledge." Md. Code, Com. Law § 1-202(b). In the case of an organization, the UCC further provides:

> [K]nowledge … received by an organization is effective for a particular transaction from the time it is brought to the attention ***of the individual conducting that transaction*** and, in any event, from the time it would have been brought to the individual's attention if the organization had exercised due diligence. An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines.

*Id*. § 1-202(f) (emphasis added). Thus, Navy Federal would be deemed to "know" about the mismatch between the beneficiary name and account number only if: (1) a specific individual at Navy Federal conducted these transactions, and (a) actual knowledge of the mismatch was brought to that individual's attention, or (b) the issue would have been brought to that individual's attention if Navy Federal had exercised due diligence in communicating significant information to that individual.

Plaintiff alleges no such facts here. She does not allege the relevant transactions were conducted by a specific individual at Navy Federal, rather than by automated means.[3] Further, Plaintiff does not allege that any specific individual who allegedly conducted the transactions actually knew about the mismatch or would have known about the mismatch had Navy Federal exercised due diligence in communicating significant information to that individual. Therefore, Navy Federal was entitled to rely on the destination account number listed in the Transfer Request and was not required to cross-reference that account number against the name of the

[3] Nor can Plaintiff amend her Complaint in good faith to include such an allegation. In today's world, nearly all wire transfer payment orders are processed by automated means. *See* UCC § 4A-207, official cmt. 2 ("A very large percentage of payment orders issued to the beneficiary's bank by another bank are processed by automated means using machines capable of reading orders on standard formats that identify the beneficiary by an identifying number or the number of a bank account . . . without human reading of the payment order itself.").

intended beneficiary. Accordingly, Navy Federal did not violate § 4A-207 by paying the funds to John Doe.

In turn, Wells Fargo's liability, if any, is governed by Section 4A-207(c):

> (c) If (i) a payment order described in subsection (b) of this section is accepted, (ii) the originator's payment order described the beneficiary inconsistently by name and number, and (iii) the beneficiary's bank pays the person identified by number as permitted by subsection (b)(1) of this section, the following rules apply:
>
> > (1) If the originator is a bank, the originator is obliged to pay its order.
> >
> > (2) If the originator is not a bank and proves that the person identified by number was not entitled to receive payment from the originator, the originator is not obliged to pay its order unless the originator's bank proves that the originator, before acceptance of the originator's order, had notice that payment of a payment order issued by the originator might be made by the beneficiary's bank on the basis of an identifying or bank account number even if it identifies a person different from the named beneficiary. Proof of notice may be made by any admissible evidence. The originator's bank satisfies the burden of proof if it proves that the originator, before the payment order was accepted, signed a writing stating the information to which the notice relates.

Md. Code, Com. Law § 4A-207(c).

Here, Navy Federal permissibly paid John Doe, the person identified by the destination account number in the payment order. Therefore, Wells Fargo is liable to Plaintiff only if (a) John Doe was not entitled to receive payment from Plaintiff, and (b) Plaintiff was not given notice that Navy Federal might make payment based on the destination account number. *See id.* § 4A-207(c)(2). Although Plaintiff alleges that John Doe was not entitled to the funds, Plaintiff does not allege that she lacked notice that Navy Federal might make payment based on the destination account number. To the contrary, she expressly acknowledged in the Wire Transfer

Agreement that Navy Federal could rely solely on the destination account number. *See* Ex. B at 4 ("If a wire transfer request describes the person to receive the wire transfer ("Beneficiary") inconsistently by name and account number, the wire transfer may be made on the basis of the account number even if the account number identifies a person different from the Beneficiary."). Therefore, Plaintiff cannot obtain a refund from Wells Fargo under § 4A-207. *See Valley Chili Props., LLC v. Truist Bank*, 738 F. Supp. 3d 846, 853 (W.D. Tex. 2024) (holding that UCC § 4A-207 was inapplicable because Plaintiff did not allege "inadequate notice regarding Defendant's right to rely solely on the account number when accepting the funds transfer."); *Berry*, 507 F. Supp. at 980 ("Plaintiffs' claim that [the originator's bank] violated [UCC § 4A-207] is futile because Plaintiffs had notice that the beneficiary's bank might rely on an identifying number in making payment pursuant to the payment order even if the number identifies a person different from the named beneficiary.").

For all these reasons, Plaintiff's UCC claim should be dismissed with prejudice as to Wells Fargo. Rather than pursuing Navy Federal or Wells Fargo, Plaintiff's remedy under the UCC is to pursue John Doe to the extent allowed under the law of mistake and restitution. *See* Md. Code, Com. Law § 4A-207(d)(1).

### B. Plaintiff's negligence claim against Wells Fargo is displaced by UCC Article 4A.

The Court should also dismiss Plaintiff's negligence claim against Wells Fargo with prejudice. Plaintiff argues that Wells Fargo owed her "a duty of ordinary care" in "preparing" and "processing" Plaintiff's funds. She further argues that Wells Fargo breached this purported duty and that she suffered damages as a result. *See* ECF No. 6 ¶¶ 33-35. However, since UCC Article 4A comprehensively and exclusively regulates wire transfers, it displaces common law claims related to such transfers.

The UCC provides that "principles of law and equity" cannot "supplement its provisions[]" where such principles are "displaced by the particular provisions" of the UCC. Md. Code, Com. Law § 1-103(c). As the drafters of Article 4A explained:

> [A] deliberate decision was made to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment. A deliberate decision was also made to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability . . . . The rules that emerged represent a careful and delicate balancing of those interests and are intended to be ***the exclusive means of determining the rights, duties and liabilities*** of the affected parties in any situation covered by particular provisions of the Article. Consequently, ***resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article***.

UCC 4A-102, official cmt. (emphasis added).

As another court of this District further explained, "when the Maryland UCC and the common law both provide a means of recovery, the Maryland UCC should displace the common law, because variations in the common law among states destroy the uniformity in commercial transactions sought to be accomplished by the UCC." *Mahabare v. Sun Trust Bank*, 573 F. Supp. 3d 1006, 1011-12 (D. Md. 2021) (citation, quotation marks, and brackets omitted); *accord Legends Title, LLC v. Cap. One, N.A.*, No. 22-650, 2023 U.S. Dist. LEXIS 38725, at *23 (D. Md. Mar. 7, 2023) ("Generally, Article 4A covers claims involving funds transfers, thus preempting common law claims seeking recovery for alleged wrongs involving funds transfers.")

In short, Article 4A preempts negligence claims related to matters governed by Article 4A. *See Blue Flame Med. LLC v. Chain Bridge Bank, N.A.*, Nos. 21-2218, 21-2219, 2023 U.S. App. LEXIS 6547, at *16-20 (4th Cir. Mar. 20, 2023) (holding that claims for conversion, fraud, constructive fraud, negligence, and breach of contract were preempted by Article 4A); *Elkin Valley Baptist Church v. PNC Bank, N.A.*, 748 F. Supp. 3d 293, 347 (W.D. Pa. 2024) (dismissing

negligence claim as preempted insofar as it was predicated on bank's conduct in processing wire transfer); *Mahabare*, 573 F. Supp. 3d at 1012 (dismissing negligence claim as displaced by UCC Articles 3 and 4); *see also Zeal Glob. Servs. Priv. Ltd. v. SunTrust Bank*, 508 F. Supp. 3d 1303, 1311-13 (N.D. Ga. 2020) (holding that Article 4A preempts a fraud claim that centers on a wire transfer).

As explained in Section IV.A above, Article 4A governs the liability of an accountholder who authorizes a wire transfer by signing a payment order. *See* Md. Code, Com. Law § 4A-202. It also governs situations where, as here, a payment order includes an alleged mismatch between the beneficiary account number and the beneficiary's name. *See id.* § 4A-207. As between Plaintiff and Wells Fargo, the UCC resolves each of these issues in favor of Wells Fargo. Although Plaintiff can recover from John Doe to the extent allowed by the law of mistake and restitution, *see* Md. Code, Com. Law § 4A-207(d)(1), she cannot pursue a negligence claim against Wells Fargo. Therefore, this claim should be dismissed with prejudice.

## V. CONCLUSION

For the foregoing reasons, Wells Fargo respectfully requests that the Court dismiss the FAC as to Wells Fargo, with prejudice, for failure to state a claim.

Respectfully submitted,

April 9, 2026.

*<u>/s/ Matthew D. Lamb</u>*

John D. Sadler (Bar No. 16421)
Matthew D. Lamb (Bar No. 20203)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, D.C. 20006
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
sadlerj@ballardspahr.com
lambm@ballardspahr.com

*Counsel for Defendant Wells Fargo Bank, National Association*